IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| ADAM SCOTT MITCHELL, | ) | Civil Action No. 7:12-cv-00370 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| DR. ABROKWAH, <u>et al.</u>, | ) | By: Hon. Michael F. Urbanski |
| Defendants. | ) | United States District Judge |

Adam Scott Mitchell, a Virginia inmate proceeding <u>pro se</u>, filed a civil rights action pursuant to 42 U.S.C. § 1983 with jurisdiction vested in 28 U.S.C. § 1343. Mitchell names as defendants Dr. Abrokwah and Nurse Amanda Davis, both former medical staff at the Southwest Virginia Regional Jail at Duffield ("Jail"). Mitchell alleges that defendants inflicted cruel and unusual punishment, in violation of the Eighth Amendment of the United States Constitution, arising from medical care he received while in the jail. Defendants filed motions to dismiss for failure to state a claim, and Mitchell responded, making the matter ripe for disposition. After reviewing Mitchell's submissions, the court concludes that Mitchell's allegations sufficiently allege deliberate indifference to a serious medical need. As such, the motions to dismiss, Dkt. #s 24 and 36, are **DENIED**.

**I.**

Mitchell alleges the following facts in the Complaint:

> Dr. Abrokwah in November 2010 ordered my staples removed from an unhealed knee surgery at [the Jail,] after which he would not provide proper medical care. Head Nurse Amanda Davis at [the Jail] refused me proper medical treatment after removing my staples. I was taken to Holston Valley, T[ennessee], for surgery due to the sutures being removed. She took the staples out. [The Jail] has denied me any type of medical treatment from November 2010 to May 2012. . . . For the record, Dr. Abrokwah ordered my staples out. Amanda Davis . . . initially got the doctor to order

> them out, and she was the one who removed them and sent me
> back to housing with no bandages or anything to cover the massive
> wound. Stayed like that for over [three] days.

Compl., Dkt. # 1, at 2, 4.

Mitchell provided more details regarding his claim in his response to Dr. Abrokwah's motion to dismiss. Brief in Opp., Dkt. # 33; Ex. 1 to Brief in Opp., Dkt. # 33-1. In June 2010, while on state court probation, Mitchell broke his left leg, requiring surgery. Mitchell subsequently violated terms of his probation and was sentenced to eighteen months imprisonment. Mitchell received multiple furloughs in November 2010 to receive follow-up treatment for his leg, culminating in additional surgery on November 17, 2010, to replace some orthopedic hardware. Mitchell returned to the Jail on November 22, 2010, and was placed in the Jail's medical unit on November 23, 2010.

In his brief in opposition, Mitchell alleges that he stayed in the Jail's medical unit "with no shower or bandage changes until Saturday November 27 when the Medical Dept wanted to clear me out of medical." Ex. 1 to Brief in Opp., Dkt. #33-1, at 2. Mitchell asserts that Nurse Davis "got in touch with the other Defendant Dr. Abrokwah in which he put in an order for her to remove my staples without even a check up or looking at them and then let a unqualified nurse remove them." Id. at 3. Mitchell asserts that he was not seen by Dr. Abrokwah on the day the staples were removed or at any time he was in the Jail's medical unit. Brief in Opp., Dkt. # 33, at 3. Shortly after Nurse Davis removed the staples, Mitchell walked back to his cell, at which time his wound "burst open with a 'plop' sound. I tried to see medical but couldn't get down there. Or get them to come up to check it out. I tried several time an hour all day." Ex. 1 to Brief in Opp., Dkt. # 33-1, at 3. Mitchell alleges that despite his efforts to obtain treatment, he

received none from the Jail. His lawyer obtained a furlough and Mitchell was seen by his orthopedic surgeon on November 30, three days after his surgical site opened.

Mitchell's account of the events is corroborated by medical records provided to the court. Dkt. # 52. In a letter to the Jail dated December 7, 2010, Mitchell's orthopedic surgeon, Dr. Daniel E. Krenk, D.O., described the incident alleged by Mitchell as a wound dehiscence.[1] Dr. Krenk indicated that Mitchell was treated in the operating room on December 1, 2010 for an irrigation and debridement. Dr. Krenk noted that cultures revealed a staph infection. As a result, Dr. Krenk recommended that Mitchell not be returned to prison until his sutures were removed. December 7, 2010 Letter, Dkt. # 52, at 5. Mitchell alleges that he was forced to undergo emergency surgery on December 9, 2010 because his "knee was rotting due to the severe staph infection [he] got from the Jail." Ex. 1 to Brief in Opp., Dkt. # 33-1, at 5. Mitchell's staples were removed on January 13, 2011, and he returned to the Jail on January 17, 2011.

## II.

Defendants filed motions to dismiss, arguing that plaintiff failed to state a claim upon which relief may be granted and, consequently, that defendants are entitled to qualified immunity.[2] To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint needs "a short and plain statement of the claim showing that the pleader is entitled to relief" and sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks

---

[1] A wound dehiscence is defined as "separation of the layers of a surgical wound; it may be partial and superficial only, or complete, with a disruption of all layers." Dorland's Illustrated Medical Dictionary 483 (30th ed. 2003).

[2] Qualified immunity allows "government officials performing discretionary functions . . . [to be] shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

3

omitted). A plaintiff's basis for relief "requires more than labels and conclusions . . . ." Id. Therefore, a plaintiff must "allege facts sufficient to state all the elements of [the] claim."[3] Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003); see E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011) (noting a court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in a plaintiff's favor).

To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). A plaintiff must show that a defendant acted with deliberate indifference to a serious medical need to state a claim under the Eighth Amendment for the unconstitutional denial of medical assistance. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Deliberate indifference requires a state actor to have been personally aware of facts indicating a substantial risk of serious harm, and the actor must have actually recognized the existence of such a risk. Farmer v. Brennan, 511 U.S. 825, 838 (1994); see Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it."). To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock

---

[3] Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). Thus, a court screening a complaint under Rule 12(b)(6) can identify pleadings that are not entitled to an assumption of truth because they consist of no more than labels and conclusions. Id. Although the court liberally construes a pro se complaint, Haines v. Kerner, 404 U.S. 519, 520-21 (1972), the court does not act as an inmate's advocate, sua sponte developing statutory and constitutional claims not clearly raised in a complaint. See Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985); see also Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978) (recognizing that a district court is not expected to assume the role of advocate for a pro se plaintiff).

the conscience or be intolerable to fundamental fairness. Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, such as loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. Sosebee v. Murphy, 797 F.2d 179, 181-83 (4th Cir. 1986).

The ruptured, open wound constitutes a "serious medical need" because the need for medical treatment was "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 353 F.3d 225, 241 (4th Cir. 2008). As regards Dr. Abrokwah, Mitchell alleges that he ordered the staples removed from Mitchell's leg without ever seeing him. Mitchell alleges that the staples were prematurely removed, causing his wound to rupture. After the staples were removed and the wound ruptured, Mitchell asserts that Dr. Abrokwah "was aware of the problem but yet refused to do anything about it." Brief in Opp., Dkt. # 33, at 4. As regards Nurse Davis, Mitchell alleges that once his wound opened up, he made repeated efforts to contact "medical" to no avail. Although Mitchell does not specifically allege that he spoke with Nurse Davis after his surgical site ruptured, she was present in the Jail's medical unit on that day. Despite his alleged efforts to obtain medical treatment at the Jail, Mitchell only received treatment for his wound by contacting his lawyer and obtaining a court-ordered furlough to see his orthopedic surgeon three days later. Under these facts and liberally construing Mitchell's pro se allegations, he plainly has stated a claim for deliberate indifference to a serious medical need.[4] Accordingly, the motions to dismiss filed by Dr. Abrokwah and Nurse Davis, Dkt. #s 24 and 36, are **DENIED**.

---

[4] Because plaintiff states a violation of a constitutional right clearly established before November 2010, defendants are not entitled to qualified immunity at the motion to dismiss stage. See, e.g., Farmer, 511 U.S. at 838 (describing

The Clerk is directed to send copies of this Memorandum Opinion and the accompanying Order to the parties.

      Entered: July 11, 2013

      */s/ Michael F. Urbanski*

      Michael F. Urbanski
      United States District Judge

---

an Eighth Amendment claim of deliberate indifference to a serious medical need); <u>West</u>, 487 U.S. at 54 (holding that a private physician under contract with a state to provide medical services to prison inmates acts under color of state law when treating an inmate).